MOSELEY ET AL., DBA VICTOR'S LITTLE SECRET *v.*
V SECRET CATALOGUE, INC., ET AL.

No. 01–1015.   Argued November 12, 2002—Decided March 4, 2003

STEVENS, J., delivered the opinion for a unanimous Court with respect to Parts I, II, and IV, and the opinion of the Court with respect to Part III,

in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. KENNEDY, J., filed a concurring opinion, *post*, p. 435.

*James R. Higgins, Jr.,* argued the cause for petitioners. With him on the briefs was *Scot A. Duvall.*

*Walter Dellinger* argued the cause for respondents. With him on the brief was *Jonathan D. Hacker.*

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae.* With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Irving L. Gornstein, Anthony J. Steinmeyer, Mark S. Davies, John M. Whealan, Nancy C. Slutter, Cynthia C. Lynch,* and *James R. Hughes.**

JUSTICE STEVENS delivered the opinion of the Court.†

In 1995 Congress amended § 43 of the Trademark Act of 1946, 15 U. S. C. § 1125, to provide a remedy for the "dilution of famous marks." 109 Stat. 985–986. That amendment, known as the Federal Trademark Dilution Act (FTDA), describes the factors that determine whether a mark is "dis-

---

*\*Peter Jaszi* filed a brief for Public Knowledge et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Bar Association by *Robert E. Hirshon, Robert W. Sacoff,* and *Uli Widmaier;* for the American Intellectual Property Law Association by *Jonathan Hudis, Amy C. Sullivan,* and *Roger W. Parkhurst;* for Best Western International, Inc., et al. by *Avraham Azrieli, Joel W. Nomkin, Charles A. Blanchard,* and *Suzanne R. Scheiner;* for Intel Corp. by *Jerrold J. Ganzfried, Mark I. Levy,* and *Thomas L. Casagrande;* for Andrew Beckerman-Rodau et al. by *Mark A. Lemley, pro se;* for the Intellectual Property Owners Association by *Laurence R. Hefter, Elizabeth McGoogan,* and *Ronald E. Myrick;* for the International Trademark Association by *Theodore H. Davis, Jr.,* and *Marie V. Driscoll;* and for Ringling Bros.-Barnum & Bailey Combined Shows, Inc., et al. by *Robert A. Long, Jr.*

*Malla Pollack, pro se,* filed a brief as *amicus curiae.*

†JUSTICE SCALIA joins all but Part III of this opinion.

tinctive and famous," and defines the term "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services."[1]   The question we granted

---

[1] The FTDA provides: "SEC. 3. REMEDIES FOR DILUTION OF FAMOUS MARKS.

"(a) REMEDIES.—Section 43 of the Trademark Act of 1946 (15 U. S. C. 1125) is amended by adding at the end the following new subsection:

"'(c)(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.   In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

"'(A) the degree of inherent or acquired distinctiveness of the mark;

"'(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

"'(C) the duration and extent of advertising and publicity of the mark;

"'(D) the geographical extent of the trading area in which the mark is used;

"'(E) the channels of trade for the goods or services with which the mark is used;

"'(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

"'(G) the nature and extent of use of the same or similar marks by third parties; and

"'(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

"'(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark.   If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity.

"'(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common

certiorari to decide is whether objective proof of actual injury to the economic value of a famous mark (as opposed to a presumption of harm arising from a subjective "likelihood of dilution" standard) is a requisite for relief under the FTDA.

I

Petitioners, Victor and Cathy Moseley, own and operate a retail store named "Victor's Little Secret" in a strip mall in Elizabethtown, Kentucky. They have no employees.

Respondents are affiliated corporations that own the VICTORIA'S SECRET trademark and operate over 750 Victoria's Secret stores, two of which are in Louisville, Kentucky, a short drive from Elizabethtown. In 1998 they spent over $55 million advertising "the VICTORIA'S SECRET brand— one of moderately priced, high quality, attractively designed lingerie sold in a store setting designed to look like a wom-

---

law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.

"'(4) The following shall not be actionable under this section:

"'(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.

"'(B) Noncommercial use of a mark.

"'(C) All forms of news reporting and news commentary.'

"(b) CONFORMING AMENDMENT.—The heading for title VIII of the Trademark Act of 1946 is amended by striking 'AND FALSE DESCRIPTIONS' and inserting ', FALSE DESCRIPTIONS, AND DILUTION.'

"SEC. 4. DEFINITION.

"Section 45 of the Trademark Act of 1946 (15 U. S. C. 1127) is amended by inserting after the paragraph defining when a mark shall be deemed to be 'abandoned' the following:

"'The term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—

"'(1) competition between the owner of the famous mark and other parties, or

"'(2) likelihood of confusion, mistake, or deception.'" 109 Stat. 985–986.

[a]n's bedroom." App. 167, 170. They distribute 400 million copies of the Victoria's Secret catalog each year, including 39,000 in Elizabethtown. In 1998 their sales exceeded $1.5 billion.

In the February 12, 1998, edition of a weekly publication distributed to residents of the military installation at Fort Knox, Kentucky, petitioners advertised the "GRAND OPENING Just in time for Valentine's Day!" of their store "VICTOR'S SECRET" in nearby Elizabethtown. The ad featured "Intimate Lingerie *for every woman*"; "Romantic Lighting"; "Lycra Dresses"; "Pagers"; and "Adult Novelties/ Gifts." *Id.*, at 209. An army colonel, who saw the ad and was offended by what he perceived to be an attempt to use a reputable company's trademark to promote the sale of "unwholesome, tawdry merchandise," sent a copy to respondents. *Id.*, at 210. Their counsel then wrote to petitioners stating that their choice of the name "Victor's Secret" for a store selling lingerie was likely to cause confusion with the well-known VICTORIA'S SECRET mark and, in addition, was likely to "dilute the distinctiveness" of the mark. *Id.*, at 190–191. They requested the immediate discontinuance of the use of the name "and any variations thereof." *Ibid.* In response, petitioners changed the name of their store to "Victor's Little Secret." Because that change did not satisfy respondents,[2] they promptly filed this action in Federal District Court.

The complaint contained four separate claims: (1) for trademark infringement alleging that petitioners' use of their trade name was "likely to cause confusion and/or mistake in violation of 15 U. S. C. § 1114(1)"; (2) for unfair competition alleging misrepresentation in violation of § 1125(a);

---

[2] After being advised of a proposal to change the store name to "VICTOR'S LITTLE SECRETS," respondents' counsel requested detailed information about the store in order to consider whether that change "would be acceptable." App. 13–14. Respondents filed suit two months after this request.

(3) for "federal dilution" in violation of the FTDA; and (4) for trademark infringement and unfair competition in violation of the common law of Kentucky. *Id.,* at 15, 20–23. In the dilution count, the complaint alleged that petitioners' conduct was "likely to blur and erode the distinctiveness" and "tarnish the reputation" of the VICTORIA'S SECRET trademark. *Ibid.*

After discovery the parties filed cross-motions for summary judgment. The record contained uncontradicted affidavits and deposition testimony describing the vast size of respondents' business, the value of the VICTORIA'S SECRET name, and descriptions of the items sold in the respective parties' stores. Respondents sell a "complete line of lingerie" and related items, each of which bears a VICTORIA'S SECRET label or tag.[3] Petitioners sell a wide variety of items, including adult videos, "adult novelties," and lingerie.[4] Victor Moseley stated in an affidavit that women's lingerie represented only about five percent of their sales. *Id.,* at 131. In support of their motion for summary judgment, respondents submitted an affidavit by an expert in marketing who explained "the enormous value" of respondents' mark. *Id.,* at 195–205. Neither he, nor any other witness, expressed any opinion concerning the impact, if any,

---

[3] Respondents described their business as follows: "Victoria's Secret stores sell a complete line of lingerie, women's undergarments and nightwear, robes, caftans and kimonos, slippers, sachets, lingerie bags, hanging bags, candles, soaps, cosmetic brushes, atomizers, bath products and fragrances." *Id.,* at 168.

[4] In answer to an interrogatory, petitioners stated that they "sell novelty action clocks, patches, temporary tattoos, stuffed animals, coffee mugs, leather biker wallets, zippo lighters, diet formula, diet supplements, jigsaw puzzles, whyss, handcufs *[sic]*, hosiery bubble machines, greeting cards, calendars, incense burners, car air fresheners, sunglasses, ball caps, jewelry, candles, lava lamps, blacklights, fiber optic lights, rock and roll prints, lingerie, pagers, candy, adult video tapes, adult novelties, t-shirts, etc." *Id.,* at 87.

of petitioners' use of the name "Victor's Little Secret" on that value.

Finding that the record contained no evidence of actual confusion between the parties' marks, the District Court concluded that "no likelihood of confusion exists as a matter of law" and entered summary judgment for petitioners on the infringement and unfair competition claims. Civ. Action No. 3:98CV–395–S (WD Ky., Feb. 9, 2000), App. to Pet. for Cert. 28a, 37a. With respect to the FTDA claim, however, the court ruled for respondents.

Noting that petitioners did not challenge Victoria's Secret's claim that its mark is "famous," the only question it had to decide was whether petitioners' use of their mark diluted the quality of respondents' mark. Reasoning from the premise that dilution "corrodes" a trademark either by " 'blurring its product identification or by damaging positive associations that have attached to it,' " the court first found the two marks to be sufficiently similar to cause dilution, and then found "that Defendants' mark dilutes Plaintiffs' mark because of its tarnishing effect upon the Victoria's Secret mark." *Id.,* at 38a–39a (quoting *Ameritech, Inc.* v. *American Info. Technologies Corp.,* 811 F. 2d 960, 965 (CA6 1987)). It therefore enjoined petitioners "from using the mark 'Victor's Little Secret' on the basis that it causes dilution of the distinctive quality of the Victoria's Secret mark." App. to Pet. for Cert. 38a–39a. The court did not, however, find that any "blurring" had occurred. *Ibid.*

The Court of Appeals for the Sixth Circuit affirmed. 259 F. 3d 464 (2001). In a case decided shortly after the entry of the District Court's judgment in this case, the Sixth Circuit had adopted the standards for determining dilution under the FTDA that were enunciated by the Second Circuit in *Nabisco, Inc.* v. *PF Brands, Inc.,* 191 F. 3d 208 (1999). See *Kellogg Co.* v. *Exxon Corp.,* 209 F. 3d 562 (CA6 2000). In order to apply those standards, it was necessary to discuss

two issues that the District Court had not specifically addressed—whether respondents' mark is "distinctive,"[5] and whether relief could be granted before dilution has actually occurred.[6] With respect to the first issue, the court rejected the argument that Victoria's Secret could not be distinctive because "secret" is an ordinary word used by hundreds of lingerie concerns. The court concluded that the entire mark was "arbitrary and fanciful" and therefore deserving of a high level of trademark protection. 259 F. 3d, at 470.[7] On

---

[5] "It is quite clear that the statute intends distinctiveness, in addition to fame, as an essential element. The operative language defining the tort requires that 'the [junior] person's . . . use . . . caus[e] dilution of the distinctive quality of the [senior] mark.' 15 U. S. C. § 1125(c)(1). There can be no dilution of a mark's distinctive quality unless the mark is distinctive." *Nabisco, Inc.* v. *PF Brands, Inc.,* 191 F. 3d 208, 216 (CA2 1999).

[6] The Second Circuit explained why it did not believe "actual dilution" need be proved:

"Relying on a recent decision by the Fourth Circuit, Nabisco also asserts that proof of dilution under the FTDA requires proof of an 'actual, consummated harm.' *Ringling Bros.-Barnum & Bailey Combined Shows, Inc.* v. *Utah Division of Travel Dev.,* 170 F. 3d 449, 464 (4th Cir. 1999). We reject the argument because we disagree with the Fourth Circuit's interpretation of the statute.

"It is not clear which of two positions the Fourth Circuit adopted by its requirement of proof of 'actual dilution.' *Id.* The narrower position would be that courts may not infer dilution from 'contextual factors (degree of mark and product similarity, etc.),' but must instead rely on evidence of 'actual loss of revenues' or the 'skillfully constructed consumer survey.' *Id.* at 457, 464–65. This strikes us as an arbitrary and unwarranted limitation on the methods of proof." *Id.,* at 223.

[7] "In this case, for example, although the word 'secret' may provoke some intrinsic association with prurient interests, it is not automatically linked in the ordinary human experience with lingerie. 'Secret' is not particularly descriptive of bras and hosiery. Nor is there anything about the combination of the possessive 'Victoria's' and 'secret' that automatically conjures thought of women's underwear-except, of course, in the context of plaintiff's line of products. Hence, we conclude that the 'Victoria's Secret' mark ranks with those that are 'arbitrary and fanciful' and is therefore deserving of a high level of trademark protection. Although the district court applied a slightly different test from the one now established

the second issue, the court relied on a distinction suggested by this sentence in the House Report: "Confusion leads to immediate injury, while dilution is an infection, which if allowed to spread, will inevitably destroy the advertising value of the mark." H. R. Rep. No. 104–374, p. 3 (1995). This statement, coupled with the difficulty of proving actual harm, lent support to the court's ultimate conclusion that the evidence in this case sufficiently established "dilution." 259 F. 3d, at 475–477. In sum, the Court of Appeals held:

> "While no consumer is likely to go to the Moseleys' store expecting to find Victoria's Secret's famed Miracle Bra, consumers who hear the name 'Victor's Little Secret' are likely automatically to think of the more famous store and link it to the Moseleys' adult-toy, gag gift, and lingerie shop. This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) and by blurring (linking the chain with a single, unauthorized establishment). Given this conclusion, it follows that Victoria's Secret would prevail in a dilution analysis, even without an exhaustive consideration of all ten of the *Nabisco* factors." *Id.*, at 477.[8]

in this circuit, the court would undoubtedly have reached the same result under the *Nabisco* test. Certainly, we cannot say that the court erred in finding that the preliminary factors of a dilution claim had been met by Victoria's Secret." 259 F. 3d, at 470–471.

[8] The court had previously noted that the "Second Circuit has developed a list of ten factors used to determine if dilution has, in fact, occurred, while describing them as a 'nonexclusive list' to 'develop gradually over time' and with the particular facts of each case. Those factors are: distinctiveness; similarity of the marks; 'proximity of the products and the likelihood of bridging the gap;' 'interrelationship among the distinctiveness of the senior mark, the similarity of the junior mark, and the proximity of the products;' 'shared consumers and geographic limitations;' 'sophistication of consumers;' actual confusion; 'adjectival or referential quality of the junior use;' 'harm to the junior user and delay by the senior user;' and the 'effect of [the] senior's prior laxity in protecting the mark.'" *Id.*, at 476 (quoting *Nabisco*, 191 F. 3d, at 217–222).

In reaching that conclusion the Court of Appeals expressly rejected the holding of the Fourth Circuit in *Ringling Bros.-Barnum & Bailey Combined Shows, Inc.* v. *Utah Div. of Travel Development,* 170 F. 3d 449 (1999). In that case, which involved a claim that Utah's use on its license plates of the phrase "greatest *snow* on earth" was causing dilution of the "greatest *show* on earth," the court had concluded "that to establish dilution of a famous mark under the federal Act requires proof that (1) a defendant has made use of a junior mark sufficiently similar to the famous mark to evoke in a relevant universe of consumers a mental association of the two that (2) has caused (3) actual economic harm to the famous mark's economic value by lessening its former selling power as an advertising agent for its goods or services." *Id.,* at 461 (emphasis added). Because other Circuits have also expressed differing views about the "actual harm" issue, we granted certiorari to resolve the conflict. 535 U. S. 985 (2002).

## II

Traditional trademark infringement law is a part of the broader law of unfair competition, see *Hanover Star Milling Co.* v. *Metcalf,* 240 U. S. 403, 413 (1916), that has its sources in English common law, and was largely codified in the Trademark Act of 1946 (Lanham Act). See B. Pattishall, D. Hilliard, & J. Welch, Trademarks and Unfair Competition 2 (4th ed. 2000) ("The United States took the [trademark and unfair competition] law of England as its own"). That law broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. See 15 U. S. C. §§ 1114, 1125(a)(1)(A). Infringement law protects consumers from being misled by the use of infringing marks and also protects producers from unfair practices by an "imitating competitor." *Qualitex Co.* v. *Jacobson Products Co.,* 514 U. S. 159, 163–164 (1995).

Because respondents did not appeal the District Court's adverse judgment on counts 1, 2, and 4 of their complaint,

we decide the case on the assumption that the Moseleys' use of the name "Victor's Little Secret" neither confused any consumers or potential consumers, nor was likely to do so. Moreover, the disposition of those counts also makes it appropriate to decide the case on the assumption that there was no significant competition between the adversaries in this case. Neither the absence of any likelihood of confusion nor the absence of competition, however, provides a defense to the statutory dilution claim alleged in count 3 of the complaint.

Unlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers. The seminal discussion of dilution is found in Frank Schechter's 1927 law review article concluding "that the preservation of the uniqueness of a trademark should constitute the only rational basis for its protection." Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813, 831. Schechter supported his conclusion by referring to a German case protecting the owner of the well-known trademark "Odol" for mouthwash from use on various non-competing steel products.[9] That case, and indeed the principal focus of the Schechter article, involved an established arbitrary mark that had been "added to rather than withdrawn from the human vocabulary" and an infringement that made use of the identical mark. *Id.*, at 829.[10]

---

[9] The German court "held that the use of the mark, 'Odol' even on non-competing goods was *'gegen die guten Sitten,'* pointing out that, when the public hears or reads the word 'Odol,' it thinks of the complainant's mouth wash, and that an article designated with the name 'Odol' leads the public to assume that it is of good quality. Consequently, concludes the court, complainant has 'the utmost interest in seeing that its mark is not diluted *[verwässert]:* it would lose in selling power if everyone used it as the designation of his goods.'" 40 Harv. L. Rev., at 831–832.

[10] Schecter discussed this distinction at length: "The rule that arbitrary, coined or fanciful marks or names should be given a much broader degree of protection than symbols, words or phrases in common use would appear

Some 20 years later Massachusetts enacted the first state statute protecting trademarks from dilution.  It provided:

> "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trademark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." 1947 Mass. Acts p. 300, ch. 307.

Notably, that statute, unlike the "Odol" case, prohibited both the likelihood of "injury to business reputation" and "dilution."  It thus expressly applied to both "tarnishment" and "blurring."  At least 25 States passed similar laws in the decades before the FTDA was enacted in 1995.  See Restatement (Third) of Unfair Competition § 25, Statutory Note (1995).

### III

In 1988, when Congress adopted amendments to the Lanham Act, it gave consideration to an antidilution provision.

---

to be entirely sound.  Such trademarks or tradenames as 'Blue Ribbon,' used, with or without registration, for all kinds of commodities or services, more than sixty times; 'Simplex' more than sixty times; 'Star,' as far back as 1898, nearly four hundred times; 'Anchor,' already registered over one hundred fifty times in 1898; 'Bull Dog,' over one hundred times by 1923; 'Gold Medal,' sixty-five times; '3-in-1' and '2-in-1,' seventy-nine times; 'Nox-all,' fifty times; 'Universal,' over thirty times; 'Lily White' over twenty times;—all these marks and names have, at this late date, very little distinctiveness in the public mind, and in most cases suggest merit, prominence or other qualities of goods or services in general, rather than the fact that the product or service, in connection with which the mark or name is used, emanates from a particular source.  On the other hand, 'Rolls-Royce,' 'Aunt Jemima's,' 'Kodak,' 'Mazda,' 'Corona,' 'Nujol,' and 'Blue Goose,' are coined, arbitrary or fanciful words or phrases that have been added to rather than withdrawn from the human vocabulary by their owners, and have, from the very beginning, been associated in the public mind with a particular product, not with a variety of products, and have created in the public consciousness an impression or symbol of the excellence of the particular product in question."  *Id.*, at 828–829.

During the hearings on the 1988 amendments, objections to that provision based on a concern that it might have applied to expression protected by the First Amendment were voiced and the provision was deleted from the amendments. H. R. Rep. No. 100–1028 (1988). The bill, H. R. 1295, 104th Cong., 1st Sess., that was introduced in the House in 1995, and ultimately enacted as the FTDA, included two exceptions designed to avoid those concerns: a provision allowing "fair use" of a registered mark in comparative advertising or promotion, and the provision that noncommercial use of a mark shall not constitute dilution. See 15 U. S. C. § 1125(c)(4).

On July 19, 1995, the Subcommittee on Courts and Intellectual Property of the House Judiciary Committee held a 1-day hearing on H. R. 1295. No opposition to the bill was voiced at the hearing and, with one minor amendment that extended protection to unregistered as well as registered marks, the subcommittee endorsed the bill and it passed the House unanimously. The committee's report stated that the "purpose of H. R. 1295 is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." H. R. Rep. No. 104–374, p. 2 (1995). As examples of dilution, it stated that "the use of DUPONT shoes, BUICK aspirin, and KODAK pianos would be actionable under this legislation." Id., at 3. In the Senate an identical bill, S. 1513, 104th Cong., 1st Sess., was introduced on December 29, 1995, and passed on the same day by voice vote without any hearings. In his explanation of the bill, Senator Hatch also stated that it was intended "to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it," and referred to the Dupont Shoes, Buick aspirin, and Kodak piano examples, as well as to the Schechter law review article. 141 Cong. Rec. 38559–38561 (1995).

## IV

The VICTORIA'S SECRET mark is unquestionably valuable and petitioners have not challenged the conclusion that it qualifies as a "famous mark" within the meaning of the statute. Moreover, as we understand their submission, petitioners do not contend that the statutory protection is confined to identical uses of famous marks, or that the statute should be construed more narrowly in a case such as this. Even if the legislative history might lend some support to such a contention, it surely is not compelled by the statutory text.

The District Court's decision in this case rested on the conclusion that the name of petitioners' store "tarnished" the reputation of respondents' mark, and the Court of Appeals relied on both "tarnishment" and "blurring" to support its affirmance. Petitioners have not disputed the relevance of tarnishment, Tr. of Oral Arg. 5–7, presumably because that concept was prominent in litigation brought under state antidilution statutes and because it was mentioned in the legislative history. Whether it is actually embraced by the statutory text, however, is another matter. Indeed, the contrast between the state statutes, which expressly refer to both "injury to business reputation" and to "dilution of the distinctive quality of a trade name or trademark," and the federal statute which refers only to the latter, arguably supports a narrower reading of the FTDA. See Klieger, Trademark Dilution: The Whittling Away of the Rational Basis for Trademark Protection, 58 U. Pitt. L. Rev. 789, 812–813, and n. 132 (1997).

The contrast between the state statutes and the federal statute, however, sheds light on the precise question that we must decide. For those state statutes, like several provisions in the federal Lanham Act, repeatedly refer to a "likelihood" of harm, rather than to a completed harm. The relevant text of the FTDA, quoted in full in n. 1, *supra,* provides that "the owner of a famous mark" is entitled to injunctive

relief against another person's commercial use of a mark or trade name if that use *"causes dilution* of the distinctive quality" of the famous mark. 15 U. S. C. § 1125(c)(1) (emphasis added). This text unambiguously requires a showing of actual dilution, rather than a likelihood of dilution.

This conclusion is fortified by the definition of the term "dilution" itself. That definition provides:

> "The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—
>
> "(1) competition between the owner of the famous mark and other parties, or
>
> "(2) likelihood of confusion, mistake, or deception." § 1127.

The contrast between the initial reference to an actual "lessening of the capacity" of the mark, and the later reference to a "likelihood of confusion, mistake, or deception" in the second caveat confirms the conclusion that actual dilution must be established.

Of course, that does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved. To the extent that language in the Fourth Circuit's opinion in the *Ringling Bros.* case suggests otherwise, see 170 F. 3d, at 460–465, we disagree. We do agree, however, with that court's conclusion that, at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution. As the facts of that case demonstrate, such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA. For even though Utah drivers may be reminded of the circus when they see a license plate referring to the "greatest *snow* on earth," it by no means follows that they will associate "the greatest show on earth"

with skiing or snow sports, or associate it less strongly or exclusively with the circus. "Blurring" is not a necessary consequence of mental association. (Nor, for that matter, is "tarnishing.")

The record in this case establishes that an army officer who saw the advertisement of the opening of a store named "Victor's Secret" did make the mental association with "Victoria's Secret," but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized. There is a complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs. The officer was offended by the ad, but it did not change his conception of Victoria's Secret. His offense was directed entirely at petitioners, not at respondents. Moreover, the expert retained by respondents had nothing to say about the impact of petitioners' name on the strength of respondents' mark.

Noting that consumer surveys and other means of demonstrating actual dilution are expensive and often unreliable, respondents and their *amici* argue that evidence of an actual "lessening of the capacity of a famous mark to identify and distinguish goods or services," § 1127, may be difficult to obtain. It may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical. Whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation. The evidence in the present record is not sufficient to support the summary judgment on the dilution count. The judgment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

As of this date, few courts have reviewed the statute we are considering, the Federal Trademark Dilution Act, 15 U. S. C. § 1125(c), and I agree with the Court that the evidentiary showing required by the statute can be clarified on remand. The conclusion that the VICTORIA'S SECRET mark is a famous mark has not been challenged throughout the litigation, *ante*, at 425, 432, and seems not to be in question. The remaining issue is what factors are to be considered to establish dilution.

For this inquiry, considerable attention should be given, in my view, to the word "capacity" in the statutory phrase that defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U. S. C. § 1127. When a competing mark is first adopted, there will be circumstances when the case can turn on the probable consequences its commercial use will have for the famous mark. In this respect, the word "capacity" imports into the dilution inquiry both the present and the potential power of the famous mark to identify and distinguish goods, and in some cases the fact that this power will be diminished could suffice to show dilution. Capacity is defined as "the power or ability to hold, receive, or accommodate." Webster's Third New International Dictionary 330 (1961); see also Webster's New International Dictionary 396 (2d ed. 1949) ("Power of receiving, containing, or absorbing"); 2 Oxford English Dictionary 857 (2d ed. 1989) ("Ability to receive or contain; holding power"); American Heritage Dictionary 275 (4th ed. 2000) ("The ability to receive, hold, or absorb"). If a mark will erode or lessen the power of the famous mark to give customers the assurance of quality and the full satisfaction they have in knowing they have purchased goods bearing the famous mark, the elements of dilution may be established.

Diminishment of the famous mark's capacity can be shown by the probable consequences flowing from use or adoption

of the competing mark. This analysis is confirmed by the statutory authorization to obtain injunctive relief. 15 U. S. C. § 1125(c)(2). The essential role of injunctive relief is to "prevent future wrong, although no right has yet been violated." *Swift & Co.* v. *United States,* 276 U. S. 311, 326 (1928). Equity principles encourage those who are injured to assert their rights promptly. A holder of a famous mark threatened with diminishment of the mark's capacity to serve its purpose should not be forced to wait until the damage is done and the distinctiveness of the mark has been eroded.

In this case, the District Court found that petitioners' trademark had tarnished the VICTORIA'S SECRET mark. App. to Pet. for Cert. 38a–39a. The Court of Appeals affirmed this conclusion and also found dilution by blurring. 259 F. 3d 464, 477 (CA6 2001). The Court's opinion does not foreclose injunctive relief if respondents on remand present sufficient evidence of either blurring or tarnishment.

With these observations, I join the opinion of the Court.