*391 KAREN NELSON MOORE, Circuit Judge,
dissenting.
Because I believe that Victoria’s Secret has failed to produce sufficient evidence to show that the Moseleys’ use of the name “Victor’s Little Secret” is likely to tarnish the VICTORIA’S SECRET mark, I would reverse the judgment of the district court and must respectfully dissent.
Under the Trademark Dilution Revision Act of 2006 (“TDRA”), Victoria’s Secret is entitled to injunctive relief if the Moseleys’ use of “Victor’s Little Secret” as the name of their adult-oriented novelty store[1] “is likely to cause dilution ... by tarnishment of the” VICTORIA’S SECRET mark. 15 U.S.C. § 1125(c)(1). “[Dilution by tarnishment” is defined as an “association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.” Id. § 1125(c)(2)(C). Thus, under the terms of the statute, to determine whether the VICTORIA’S SECRET mark is likely to be tarnished by the Moseleys’ use, this court must inquire as to both the “association” between the two marks and the “harm” that the association causes to the senior mark.
Because I agree that there is a clear association between the two marks, the determinative inquiry in this dilution-bytarnishment case is whether that association is likely to harm Victoria’s Secret’s reputation. See id. § 1125(c)(2)(C) (“that harms the reputation of the famous mark”). Contrary to the majority’s conclusion, however, given the record before the panel, I would hold that Victoria’s Secret has failed to meet its burden to show that the Moseleys’ use of “Victor’s Little Secret” is likely to dilute Victoria’s Secret’s mark.[2]
Victoria’s Secret’s evidence of tarnishment includes nothing more than the following: (1) an affidavit from Army Colonel John E. Baker stating that he “was ... offended by [the] defendants’ use of [Victoria’s Secret’s] trademark to promote ... unwholesome, tawdry merchandise,” such as “ ‘adult’ novelties and gifts,” and that since his “wife ... and ... daughter ... shop at Victoria’s Secret, [he] was further dismayed by [the] defendants’ effort to associate itself with, trade off on the image of, and in fact denigrate a store frequented by members of [his] family,” Record on Appeal (“ROA”) at 267 (Baker Aff.); and (2) a statement from one of Victoria’s Secret’s corporate officers that Victoria’s Secret strives to “maintain[ ] an image that is sexy and playful” and one that “avoid[s] *392 sexually explicit or graphic imagery.” Id. at 90 (Kriss Aff.).
Reviewing Baker’s affidavit, I believe that it is plain that Baker made a “mental association” between “Victor’s Little Secret” and “Victoria’s Secret.” Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 434, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003); see also ROA at 266 (Baker Aff.). It is also clear that Baker held a negative impression of “Victor’s Little Secret.” See Moseley, 537 U.S. at 434, 123 S.Ct. 1115; see also ROA at 267 (Baker Aff.). But despite the clear negative association of this one individual when confronted with “Victor’s Little Secret,” Victoria’s Secret has presented no evidence that Baker’s, or anyone else’s, distaste or dislike of “Victor’s Little Secret” is likely to taint their positive opinion or perception of Victoria’s Secret. Yet evidence that the junior mark is likely to undermine or alter the positive associations of the senior mark — i.e., evidence that the junior mark is likely to harm the reputation of the senior mark- — is precisely the showing required under the plain language of 15 U.S.C. § 1125(c)(2)(C) to prove dilution by tarnishment. As the Second Circuit recently noted in Starbucks Corp. v. Wolfe’s Borough Coffee, Inc., 588 F.3d 97 (2d Cir.2009):
That a consumer may associate a negative-sounding junior mark with a famous mark says little of whether the consumer views the junior mark as harming the reputation of the famous mark. The more relevant question, for purposes of tarnishment, would have been how a hypothetical coffee [with a negative-sounding name] would affect the positive impressions about the coffee sold by Starbucks.
Starbucks Corp., 588 F.3d at 110; see also J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 24:89 (4th ed.) [hereinafter McCarthy on Trademarks] (discussing tarnishment claims as being premised on the notion that “positive associations” of the senior mark will be displaced or degraded by the negative associations of the junior mark); Restatement (Third) of Unfair Competition § 25 cmt. g (1995) (“To prove a case of tarnishment, the prior user must demonstrate that the subsequent use is likely to ... undermine or damage the positive associations evoked by the mark.”). In fact, when reviewing the exact same evidentiary record, the Supreme Court explicitly noted that Victoria’s Secret’s offer of proof included no evidence that “Victor’s Little Secret” affected Baker’s positive impressions of Victoria’s Secret:
The record in this case establishes that an army officer ... did make the mental association with “Victoria’s Secret,” but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized. There is a complete absence of evidence of any lessening of the capacity of the VICTORIA’S SECRET mark to identify and distinguish goods or services sold in Victoria’s Secret stores or advertised in its catalogs. The officer was offended by the ad, but it did not change his conception of Victoria’s Secret. His offense was directed entirely at [the Moseleys], not at [Victoria’s Secret]. Moreover, the expert retained by respondents had nothing to say about the impact of [the Moseleys’] name on the strength of [Victoria’s Secret’s] mark.
Moseley, 537 U.S. at 434, 123 S.Ct. 1115 (emphases added).[3]
*393 In short, Victoria’s Secret has presented no probative evidence that anyone is likely to think less of Victoria’s Secret as a result of “Victor’s Little Secret” and cannot therefore prevail on its claim of dilution by tarnishment. See Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 507 (2d Cir.1996) (“Absent any showing that Henson’s use [of a puppet named Spa’am] will create negative associations with the SPAM mark, there [is] little likelihood of dilution.”). Instead of developing a record on remand that contains at least some evidence that Victoria’s Secret’s reputation is likely to suffer because of the negative response that “Victor’s Little Secret” engendered, the record before the panel indicates only that a single individual thinks poorly of “Victor’s Little Secret.” See Moseley, 537 U.S. at 434, 123 S.Ct. 1115. On this record, it is simply no more probable that Victoria’s Secret will suffer reputational harm as a result of the Moseleys’ use of “Victor’s Little Secret” than it is probable that those who are offended by ‘Victor’s Little Secret” will limit their negative impressions to the Moseleys and refrain from projecting those negative associations upon Victoria’s Secret. Baker’s affidavit does nothing to contradict this conclusion, and given the absence of any indication that his or his family’s opinion of Victoria’s Secret changed following the Moseleys’ use of ‘Victor’s Little Secret,” his affidavit may, in fact, provide evidence *394 that individuals are likely to confine then-distaste to the Moseleys. See id. (“The officer was offended by the ad, but it did not change his conception of Victoria’s Secret. His offense was directed entirely at [the Moseleys], not at [Victoria’s Secret].”).
Certainly, it is possible that the Moseleys’ use of “Victor’s Little Secret” to sell adult-oriented material and other novelties could reflect poorly on the VICTORIA’S SECRET mark and could cause Victoria’s Secret to suffer damage to its “sexy and playful” reputation, but the evidentiary standard set forth in the statute is one of likelihood not mere possibility. Likelihood is based on probable consequence and amounts to more than simple speculation as to what might possibly happen. See McCarthy on Trademarks § 24:115 n. 2 (indicating that “ ‘likelihood’ in the dilution part of the Lanham Act has the same meaning as it does in the traditional infringement sections of the Lanham Act: as synonymous with ‘probability’ ”); see also Parks v. LaFace Records, 329 F.3d 437, 446 (6th Cir.2003) (“A ‘likelihood’ means a ‘probability’ rather than a ‘possibility’ of confusion.”). Yet, as the majority notes, on the instant record, the “tarnishing effect of the Moseley’s mark on the senior mark” is nothing more than “speculative.” Maj. Op. at 388-89.
Despite the absence of evidence, the majority is willing to assume that Victoria’s Secret has met its burden to prove the essential element of “harm to reputation” based on the fact that numerous cases from other jurisdictions conclude, without much inquiry, “that a famous mark is tarnished when its mark is semantically associated with a new mark that is used to sell sex-related products.” Id. at 388. I do not agree. Although it is true that courts have concluded that a finding of tarnishment is likely when a mark’s “likeness is placed in the context of sexual activity, obscenity, or illegal activity,” Horniel Foods Corp., 73 F.3d at 507, a court cannot ignore the showing of reputational harm that the statute requires.[4]
*395 Even assuming that “Victor’s Little Secret” is plainly unwholesome when compared to Victoria’s Secret and that this case is completely analogous to those cases on which the majority relies, I still maintain that it is improper simply to assume likelihood of harm to the reputation of a senior mark when dealing with a junior mark of sexual character. As recounted above, there is no evidence connecting Victor’s Little Secret’s “unwholesome” or “tawdry” sexual character to the senior mark’s reputation, and there is nothing in the language of the TDRA that would allow the court to forgive a party’s obligation present proof as to an element of the tarnishment cause of action — i.e., the likelihood of harm to reputation.[5] See McCarthy on Trademarks § 24:115 (“Even after the 2006 revision when only a likelihood of dilution is required, ... judges should demand persuasive evidence that dilution is likely to occur. Even the probability of dilution should be proven by evidence, not just by theoretical assumptions about what possibly could occur or might happen.”).
With its conclusion that there is sufficient evidence of harm to the reputation of the VICTORIA’S SECRET mark based solely on the sexual nature of the junior mark, the majority sanctions an almost non-existent evidentiary standard and, in the process, essentially eliminates the requirement that a plaintiff provide some semblance of proof of likelihood of reputational harm in order to prevail on a tarnishment claim, despite the plain language of 15 U.S.C. § 1125(c)(2). Because I believe that Victoria’s Secret has not met its burden to show that ‘Victor’s Little Secret” is likely to dilute the famous mark by way of tarnishment, I respectfully dissent.

. Victor's Little Secret "sell[s] a wide variety of items, including adult videos, adult novelties, and lingerie.” Moseley v. v. Secret Catalogue, Inc., 537 U.S. 418, 424, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003) (internal quotation marks omitted); see also id. at 424 n. 4, 123 S.Ct. 1115 (listing numerous other items sold). "Victor Moseley stated in an affidavit that women’s lingerie represented only about five percent of their sales.” Id. at 424, 123 S.Ct. 1115.

. I respectfully disagree with the majority’s conclusion that in dilution-by-tarnishment cases involving new marks "with lewd or offensive-to-some sexual association[s]” the TDRA establishes a presumption or inference of tarnishment that the Moseleys must rebut. Maj. Op. at 389, 390. To be sure, the House Judiciary Committee Report highlights Congress's concern with the pre-TDRA actual-dilution standard, but I do not read its concern that the previous standard created "an undue burden” to mean that Congress envisioned a modification of the party that bears the burden of proof as opposed to simply a lightening of the evidentiary showing. See H.R.Rep. No. 109-23, at 5 (2005) ("Witnesses at the[] [legislative] hearings focused on the standard of harm threshold articulated in Moseley [sic].... The Moseley [sic] standard creates an undue burden for trademark holders who contest diluting uses and should be revised.”). The burden to show tarnishment remains with Victoria’s Secret.

. The majority mischaracterizes my citation to the Supreme Court's decision as evidencing a refusal to follow the "will of Congress" and a desire to follow the pre-TDRA "policy [of the] ... Supreme Court.” Maj. Op. at 389. My citation to the Supreme Court's decision, *393 however, does no such thing. First, as stated previously, I believe that the majority’s conclusion that Congress intended to change which party has the burden of proof — i.e., the framework governing which party must put forth evidence in support of its position — -as opposed to the standard of harm — i.e., actual harm versus a likelihood of harm — is not supported by the statute or the legislative history. In fact, the only evidence that the majority cites in support of its belief that Congress intended to place the burden of proof on the defendant is the House Committee Report, but even that Report undercuts the majority’s argument. The full paragraph from which the majority draws its quotation states:
Witnesses at the[] [legislative] hearings focused on the standard of harm threshold articulated in Moseley [sic]. For example, a representative of the International Trademark Association observed that ”[b]y the time measurable, provable damage to the mark has occurred much time has passed, the damage has been done, and the remedy, which is injunctive relief, is far less effective.” The Committee endorses this position. The Moseley [sic] standard creates an undue burden for trademark holders who contest diluting uses and should be revised.
H.R.Rep. No. 109-23, at 5 (internal footnote omitted and emphasis added). It was the "standard of harm threshold,” i.e., the showing of actual harm that the Supreme Court employed, that was Congress’s concern, not the party bearing the burden of proof. This conclusion is supported by the hearings to which the Committee Report refers. During those hearings, the focus of both the House Representatives and the witnesses was whether Congress should "maintain an actual dilution standard, as the Supreme Court held in the Victoria’s Secret case,” or adopt a "likelihood of dilution standard.” Trademark Dilution Revision Act of 2005: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the H. Comm, on the Judiciary, 109th Cong. 4 (2005) (statement of Rep. Berman); see generally id. at 1-54.
I certainly recognize that Congress changed the law concerning dilution in response to the Supreme Court’s decision in Moseley, but the Supreme Court in Moseley said nothing about changing the party bearing the burden of proof and neither does the amended statute. Instead, the statute explicitly states that "dilution by tarnishment” is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C) (emphasis added). In concluding that Victoria’s Secret has failed to prove a likelihood of tarnishment because it has failed to present evidence that Victor’s Little Secret is likely to harm the reputation of its mark, I am doing nothing more than applying the plain language of the statute that Congress enacted after the Supreme Court’s decision. This approach certainly reflects the "will of Congress.” Maj. Op. at 389.

. Nor can the court ignore the character of the senior mark when applying the majority's "rule.” Victoria's Secret sells women's lingerie, and, as Victoria's Secret readily admits, its own mark is already associated with sex, albeit not with sex novelties. See ROA at 90 (Kriss Aff.) (noting that Victoria's Secret attempts to maintain a "sexy and playful” image); see also, e.g., id. at 156-57 (depicting Victoria's Secret advertisements for "sexy little things” lingerie, which urge customers to "[b]e bad for goodness sake[] [i]n peek-a-boo's, bras and sexy Santa accessories,” to "[g]ive flirty panties” as gifts, and participate in the store's "panty fantasy,” which it describes as "Very racy. Very lacy”); id. at 209 (reproducing an article in Redbook magazine entitled "46 Things to Do to a Naked Man,” which highlights Victoria's Secret's role in the sexual activities of one of the contributors).
In essence, the VICTORIA'S SECRET mark is not entirely separate from the sexual context within which the junior mark, "Victor’s Little Secret,” operates. This fact makes the instant case unlike many of the cases that the majority cites. Cf. Williams-Sonoma, Inc. v. Friendfinder, Inc., No. C 06-6572 JSW (MEJ), 2007 WL 4973848, at *7 (N.D.Cal. Dec. 6, 2007) (likelihood of tarnishment where "marks for children and teenager furnishings” were associated "with pornographic websites”); Kraft Foods Holdings, Inc. v. Helm, 205 F.Supp.2d 942, 949 (N.D.Ill.2002) (likelihood of dilution where the mark for cheese products was associated with websites that "depict[ ] graphic sexuality and nudity, as well as illustrations of drug use and drug paraphernalia”); Mattel Inc. v. Internet Dimensions Inc., 2000 WL 973745, 55 U.S.P.Q.2d (BNA) 1620, 1627 (S.D.N.Y. July 13, 2000) (likelihood of tarnishment when the BARBIE mark was linked to adult-entertainment websites); Polo Ralph Lauren L.P. v. Schuman, 1998 WL 110059, 46 U.S.P.Q.2d (BNA) 1046, 1048 (S.D.Tex. Feb. 9, 1998) (dilution likely where Polo Ralph Lauren’s mark was associated with "an adult entertainment business”); Toys “R” Us Inc. v. Akkaoui, 1996 WL 772709, 40 U.S.P.Q.2d (BNA) 1836, 1838 (N.D.Cal. Oct. 29, 1996) (likelihood of tarnishment where children's toy store was *395 associated with “a line of sexual products”); Hasbro, Inc. v. Internet Entm’t Group Ltd., 1996 WL 84853, 40 U.S.P.Q.2d (BNA) 1479, 1480 (W.D.Wash. Feb. 9, 1996) (dilution likely where the children’s game Candyland was linked to "a sexually explicit Internet site”); Am. Express Co. v. Vibra Approved Labs. Corp., 10 U.S.P.Q.2d (BNA) 2006, 2014 (S.D.N.Y. 1989) (tarnishment likely where an American Express charge card was linked to condoms and a sex-toy store); Pillsbury Co. v. Milky Way Prods., Inc., 1981 WL 1402, 215 U.S.P.Q. (BNA) 124, 126, 135 (N.D.Ga. Dec. 24, 1981) (likelihood of dilution where the Pillsbury dough figures were portrayed as "engaging in sexual intercourse and fellatio”); Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 467 F.Supp. 366, 377 (S.D.N.Y.1979), affirmed by 604 F.2d 200, 205 (2d Cir.1979) (tarnishment likely where NFL cheerleaders were portrayed in a pornographic film).

. The potential problem with simply assuming tarnishment when the junior mark places the senior mark in a sexual context becomes apparent if one considers a different case. What if the holder of a sex-related senior mark levied a claim of dilution by tarnishment against the holder of a junior mark that was similarly associated with sex? Would the court be willing to assume without further proof, that despite their similar sexual origins the junior mark necessarily tarnishes the senior mark? Under the majority’s reasoning, such an assumption would be appropriate. This cannot be the law.