# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-2058

FRANK M. SULLIVAN III,

*Plaintiff-Appellant,*

v.

CBS CORPORATION, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 C 5060—**William J. Hibbler**, *Judge.*

———————

ARGUED DECEMBER 2, 2003—DECIDED SEPTEMBER 24, 2004

———————

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Seeking to protect his trademark in the band name "Survivor" (the Band), Frank Sullivan brought an action alleging trademark infringement, federal and common law trademark dilution, unfair competition, and deceptive trade practices against defendants CBS Corporation, CBS Broadcasting, Survivor Productions, TVT Records and Tee Vee Toons, (collectively referred to as CBS), the producers and distributors of music CDs and merchandise bearing the logo of the well-known television show, "Survivor" (the Series). Sullivan, who registered the mark "Survivor" in connection with the Band in 1994, claims that the defendants cannot use the word "Survivor" on their CDs and

merchandise. The district court granted summary judgment in favor of the defendants, holding that although Sullivan's mark is entitled to protection, Sullivan cannot demonstrate any likelihood of confusion as to the origin of the CDs or merchandise related to the Series, nor can Sullivan show any likelihood of dilution. On our *de novo* review, we too conclude that Sullivan cannot show any likelihood of confusion or dilution, and so we affirm the judgment of the district court.

# I

## A

Sullivan and four other men formed Survivor the Band in 1977. Throughout the 80s, the Band released a number of albums and had a number of hit songs, including "Eye of the Tiger," the theme song for the well-known movie Rocky III. The Band toured extensively and won several music industry awards. Survivor released its first greatest hits collection in 1989, and followed up with another collection containing two new songs in 1993.

Over the years, various members left the Band. A former lead singer for the Band then began performing with different musicians under the name Survivor. Litigation followed, leading Sullivan and another member, James Peterik, to apply for a trademark registration for the name "Survivor" in March 1994. Sullivan and Peterik sought to use the name in connection with "Entertainment services: namely providing band and/or musical services." The registration did not encompass merchandising. Peterik later assigned his rights to Sullivan, who remains the sole holder of the mark.

Sullivan continues to perform as Survivor, though the Band has not released any new music in the United States since 1993. At these concerts, Survivor sells its CDs and other products like t-shirts. Survivor also licenses music to television shows and commercials. Record stores sell the

Band's CDs and radio stations continue to play the Band's music. Sullivan claims that the Band sells millions of dollars' worth of records and merchandise, and that he spends millions of dollars each year advertising and promoting the Band, but he offered no evidence in support of these contentions.

## B

In May 2000, CBS debuted a weekly reality television series called "Survivor." On the Series, sixteen participants are "marooned" on an island or otherwise inaccessible area. The castaways face various trials and contests, all while trying to survive the harsh realities of life in the deserted location. Every few days, the castaways vote to evict one member of the group. This continues until two castaways remain. The eliminated participants then vote on which of the two left should win the $1 million prize. The Series has been a great success.

Before the Series first aired, CBS developed a logo for use in promotions and advertising. The logo features an oval with the word "SURVIVOR" across the center, surrounded by a scene reflecting the current season's location. The words "OUTWIT," "OUTPLAY," and "OUTLAST" surround the perimeter of the oval. In the second season, for example, the inside scene showed a kangaroo and sunset on an Australian outback scene. The inside phrase was changed from "SURVIVOR," to "SURVIVOR-AUSTRALIAN OUTBACK."

## C

In August 2000, CBS released a soundtrack featuring a compilation of original music from the Series. The word "SURVIVOR" is printed in large block letters across the front of the album, while the words "THE OFFICIAL SOUNDTRACK TO THE HIT CBS TV SERIES" are printed underneath. The lower right of the CD shows the Series' oval

logo. CBS released a second CD in November 2000, this one proclaiming that it featured music "inspired" by the Series. The front of the second CD shows the oval Series logo, with flames coming through the top of the oval, and the words "OFFICIAL PARTY SURVIVAL KIT" printed below the logo. This CD contains previously recorded songs with survival and island themes. Both CDs are marketed primarily to Series viewers and are classified as soundtracks. In June 2000, CBS launched a line of merchandise, including t-shirts, mugs, bags, calendars, and books, all bearing the oval Series logo.

## II

Sullivan claims that the defendants are infringing his Band mark with their use of the word "Survivor" on the two CDs and the related merchandise, in violation of Sections 32(1) and 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1)(A), the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65, the Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510 *et seq.*, the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505 *et seq.*, as well as the common law of unfair competition. Only the trademark infringement and dilution theories are before us on appeal. To prevail on his trademark infringement claims, Sullivan must show that his mark is entitled to protection and that there is a likelihood of confusion between his mark and CBS's mark. The district court found that Sullivan's mark, "Survivor" (referring to the Band), was descriptive, but that it had acquired secondary meaning. The court then applied a seven-factor test and found that Sullivan failed to demonstrate any likelihood of confusion.

Although CBS does not contest the district court's classification of Sullivan's mark as descriptive, in our view that classification is incorrect. Ultimately, this does not change the outcome for Sullivan, but the mark, "Survivor," for a

band, is properly classified as arbitrary, not descriptive. Trademarks are classified in one of four categories—fanciful, arbitrary, descriptive, and generic. The amount of protection inherently available tends to increase from generic to fanciful. Generic words are entitled to no protection, whereas fanciful terms are usually entitled to strong protection.

A descriptive term is one that describes a characteristic or ingredient of a product. Descriptive terms are usually not entitled to protection " 'because they are [a] poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature.' " *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986) (quoting *M.B.H. Enter., Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980)). Sullivan argues, correctly, that the word "survivor" is not descriptive of a musical band. The word "survivor" when used as a band name is arbitrary; there is nothing about the word which is necessary to the description of a band, or of Sullivan's band. Because the word "survivor" is a common word that is being applied to a service unrelated to its meaning, the Band name, properly considered, is an arbitrary mark.

Classifying "Survivor" as an arbitrary mark does not, however, automatically mean that the mark is entitled to strong protection. The strength of a mark is determined partly by its classification, but the courts are still free to examine the strength of a mark outside its area of use. In other words, just because a trademark is arbitrary, if it is used only in a narrow area, others may use a similar mark for different goods without any trademark infringement. See *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1170-71 (7th Cir. 1986). We can assume that Sullivan's mark is entitled to strong protection as against other band names, but there is no presumption that his mark is equally strong outside that realm.

This case turns, in our view, on Sullivan's failure to submit enough evidence on the likelihood of confusion point to survive summary judgment. Sullivan had to submit evidence that, if believed by a trier of fact, would show that consumers are likely to be confused as to the source of the CDs and merchandise at issue. In assessing the likelihood of confusion, courts have identified seven relevant factors that help in deciding the ultimate question: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). The district court found that similarity of the marks, similarity of the products, degree of care, strength of mark, actual confusion, and intent all favored CBS. Area and manner of concurrent use favored Sullivan.

We begin by considering the strength of Sullivan's mark. Sullivan contends that because "Survivor" is arbitrary as a band name, it is entitled automatically to wide protection in any field as against any competitor. The law draws finer lines than this. A mark can be arbitrary for one purpose but it may still be used extensively in other areas. As applied to Sullivan, this means that he might enjoy strong protection for his mark as against other aspiring rock bands or musical groups, but that he would have only weak or nonexistent protection outside that particular niche. See *Source Services Corp. v. Source Telecomputing Corp.*, 635 F. Supp. 600, 611 (N.D.Ill. 1986) (citing *Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981) (finding that although the word "sun" was arbitrary when used as the name of a financial institution, the mark was still weak because of the common use of the word "sun" in other marks)).

The ultimate concern in a trademark case like this one is the tendency of the mark to indicate the origin of the product in the eyes of the purchasing public. *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979). The crucial question is whether the mark is strong enough that the public will form an association between the mark and the source of that particular good. See 2 McCarthy, Trademarks and Unfair Competition § 11:73 (4th ed. 2003) ("The legal strength of a mark is usually the same as its economic and marketing strength.").

Sullivan claims that his mark is famous enough to make consumers think the Series' merchandise is likely to come from his band. But he offered no evidence to back up this guess. He might have offered specifics on how well-known the name "Survivor" still is today as the identifier of a rock band, but he did not. Survivor has not released a new album in the United States since 1993. Sullivan offered nothing about how much money he spends promoting the Band, or on advertising for the Band, nor did he provide any evidence of how much money the Band has earned. Sullivan presented newspaper articles mentioning the Band, but these stories were not about the Band; they either announced the Band's upcoming performance, or identified Survivor as the band that recorded a particular song. There is simply no evidence that "Survivor" the Band enjoys fame and recognition as the originator of any products other than rock albums and concert t-shirts.

Looking next at the similarity of the two marks, we make the comparison "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 898 (7th Cir. 2001) (citations omitted). "[I]f one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983). It is "inappropriate to focus on minor

stylistic differences to determine if confusion is likely" if the public does not usually encounter the two marks together. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997).

Sullivan encourages us to focus our analysis only on the word "Survivor," which obviously appears in both marks. Sullivan argues that CBS's version of the mark, which includes an oval background containing a drawing relevant to the season's location, and the words, "Outplay, Outlast, Outwit," adds only minor, stylistic differences. Sullivan is correct that the dominant portion of CBS's mark is the word, "Survivor." Nonetheless, the word "Survivor" never appears alone on any of CBS's merchandise at issue. The term always appears over a relevant scene of some kind and surrounded by the words, "Outplay, Outlast, Outwit." Consumers in the marketplace never see CBS's mark as the word "Survivor" alone.

CBS responds that when we focus on the ultimate question, it is plain that despite the similarity of the dominant portion of the marks, there can be no confusion. We agree. In a case comparing the marks "Yogowhip" and "Miracle Whip," the court acknowledged that the word "whip," was prominent and identical, but it held that when consumers viewed the labels as a whole, as they always would at the grocery store, there could be no confusion. *Henri's Food Prods.*, 717 F.2d at 355. The court explained, "[b]ased on our examination of the marks, we think that a purchaser, even a supermarket shopper who will make a selection quickly and without careful examination, is likely to differentiate between the products." *Id.* We find the same to be true here. The marks, when viewed in their entirety, are quite different. Additionally, on the two products that give rise to the greatest concern—the music CDs—CBS has taken additional steps to associate the CDs with the television show.

On both of the CDs issued by CBS, not only is the "Survivor" mark on display in its entirety, but each CD announces its affiliation with the CBS television show. The first CD, which contains music composed for the show, states that it is "The Official Soundtrack to the Hit CBS TV Series." The second CD announces that it is "Music Inspired by the Hit CBS TV Series." CBS has, in short, taken substantial steps to make the association between its CDs and its television show readily apparent from the face of the CD. It is important to note that Sullivan makes no claim that his trademark precludes CBS from calling its show "Survivor." He wants only to force it to stop using that name on the associated musical CDs and merchandise. Not only is the mark different in the ways we have described, but CBS has taken extra steps to assure that their products are readily differentiated. Although the marks are similar, the prominent display of different names on the marks reduces any likelihood of confusion. *Ziebart Int'l Corp. v. After Market Assocs.*, 802 F.2d 220, 227 (7th Cir. 1986) (citation omitted).

The district court thought that the "similarity of products" factor also favored CBS, but we are not so sure. We have held that "a closely related product is one which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Ty, Inc.*, 237 F.3d at 900 (citation omitted). The similarity between products focuses on whether the buying public thinks or expects the products to come from the same source. Sullivan asserts that because both he and CBS sell CDs and merchandise like t-shirts and hats, that their products are necessarily similar. He comes closer to creating a genuine issue of fact on the similarity factor, with respect to the CDs only. But even giving him the benefit of the doubt with respect to this factor is not enough to carry the day for him here. First, there is nothing magical about these "factors"; they operate only as a heuristic device to assist in determining whether

confusion exists. Moreover, it is not as if the Band's CDs are identical to the Series' CDs; they are not. The Band CDs are placed in the "rock music" section of stores (both physical and virtual), while CBS's CDs are grouped with soundtracks. There is no indication that CBS has tried to suggest that all the music on its CDs comes from an eponymous band.

Both Sullivan and CBS market similar merchandise, but Survivor the Band sells t-shirts only at their concerts, whereas CBS sells Survivor the Series t-shirts, hats, and other merchandise through various outlets. As with the CDs, Survivor the Series' merchandise prominently displays the entire "Survivor" mark. Taking these facts as a whole, we conclude that no rational factfinder could conclude that any consumer would be confused as to the source of the merchandise. Series' merchandise is not sold through the same outlets as the Band's merchandise, nor is it advertised in the same manner or in similar outlets. *Cf. Ty, Inc.*, 237 F.3d at 899-900.

Sullivan finally takes issue with the district court's finding that no evidence of actual confusion exists. Sullivan asks us to disregard the results of a CBS survey demonstrating no actual confusion. That survey, he claims, improperly focused on confusion about music, not trade identities; it was limited to only one CD; and it failed to include any questions about other merchandise. This court has upheld similar surveys, however. See *Henri's*, 717 F.2d at 356-57. Sullivan had ample opportunity to conduct his own survey, but he chose not to. See *id.* ("Kraft had the opportunity to conduct and introduce its own survey to remedy the timing and site selection inadequacies, but chose not to do so.").

Sullivan was not required to conduct his own survey, but he presented no other evidence of actual confusion or likelihood of confusion other than the evidence we have already discussed, with one exception. That exception is a

presentation showing the results of searches conducted on two automated search engines. The search engines retrieved websites related to both the Band and the Series. This does not mean, however, that the search engine was "confused" as to the source of the sites. It is responding to a query that asks for all records listing "Survivor" as the author. But those results just take us back to the same point about confusion: would a consumer, looking at the different websites, think that CBS and the Band were somehow from the same source? No evidence of such confusion exists, and the websites contain the same additional information from CBS that distinguishes its "Survivor" from all others. Because there is no triable issue of fact on likelihood of confusion, we conclude that CBS's "Survivor" mark does not infringe Sullivan's "Survivor" mark.

In addition to his trademark infringement claims, Sullivan also brought claims of trademark dilution. In order to state a claim of dilution, proof of actual dilution is required, either through survey, financial, or circumstantial evidence. *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418 (2003). Sullivan failed to present any evidence of actual dilution, and thus his dilution claim must fail.


## III

Sullivan, through his band Survivor, has been fortunate enough to have a successful rock band, succeeding in a business where many fail. CBS, through its show Survivor, has (for better or for worse) revolutionized the world of reality television. Both Sullivan and CBS are using the same mark, but we hold that there is no likelihood of confusion in the minds of consumers. We therefore AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*