**CORBOND CORPORATION, Plaintiff,**

v.

**CORE FOAM, INC., Defendant.**

No. 04–C–127–C.

United States District Court, W.D. Wisconsin.

Jan. 31, 2005.

Michael E. Florey, Minneapolis, MN, for Plaintiff.

Anthony J. Kane, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, MN, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for injunctive relief. Plaintiff Corbond Corporation contends that defendant Core Form, Inc. infringes its trademark, dilutes its trademark and unfairly competes in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125 and unfairly competes in the marketplace in violation of Wis. Stat. § 100.20 and Wisconsin common law. Jurisdiction is present. 28 U.S.C. §§ 1331 and 1367.

Presently before the court is defendant's motion for summary judgment. Because there is similarity between the CORE-FOAM marks of defendant and the COR-BOND mark of plaintiff, similarity in the parties' products, overlap in use and promotion of the parties' products and potential initial interest confusion among foam insulation consumers and because plaintiff's mark is strong in the foam insulation marketplace, I will deny defendant's motion as it applies to plaintiff's federal trademark infringement and unfair competition claims. However, plaintiff failed to adduce evidence of actual dilution of its CORBOND mark. Therefore, I will grant defendant's motion as it applies to plaintiff's federal trademark dilution claim. Because defendant failed to develop any argument rebutting plaintiff's state law claims of unfair competition and supplemental jurisdiction exists over those claims, I will deny defendant's motion for summary judgment as to plaintiff's state law claims.

From the parties' combined proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Plaintiff Corbond Corporation is a Montana corporation that has marketed and sold spray-in-place foam insulation since 1986. Plaintiff's president is Neal Ganser.

CORBOND foam insulation is used in stud walls, poured concrete walls and masonry block walls. For example, when applying CORBOND foam insulation to a structure that will contain sheetrock and stud wall cavities, the installer sprays the insulation into place after plumbers, electricians and other subcontractors have completed rough-in work but before the sheetrock is put in place. The insulation is used in commercial, residential and institutional buildings. Plaintiff has installed its foam insulation in such notable buildings as the Ray and Maria Stat Center on the campus of the Massachusetts Institute of Technology, the Maine Audubon Center, Frank Lloyd Wright's home at Taliesen in Spring Green, Wisconsin, The Monona Terrace Convention Center in Madison, Wisconsin, and Clint Eastwood's Tahama Golf Club in Monterey, California.

According to plaintiff's marketing materials, CORBOND foam insulation does not contain formaldehyde. Although the Consumer Product Safety Commission lifted its 1982 ban forbidding use of urea formaldehyde foam insulation in residences and schools in the United States, many states require sellers of buildings to disclose the presence of formaldehyde and a few states still restrict the use of foam insulation that contains formaldehyde.

In 2002, Richard Porter founded defendant Core Foam, Inc., a Tennessee corporation. Porter serves as defendant's president. Before creating Core Foam, Inc., Porter worked at Eastman Chemical, primarily with producers of urethane foam. Eastman Chemical was in the business of manufacturing polyurethane raw materials used to make polyurethane foam insulation, the same type of insulation sold by plaintiff. In 2001, Porter began working as a technical manager for Polymaster, a supplier of foam insulations, where he developed and launched Polymaster's first line of spray polyurethane foam insulation.

Defendant markets and sells masonry foam insulation that installers inject into the hollow cavities of masonry blocks and stud wall cavities. Defendant's insulation is suitable for commercial, new residential and retrofit applications. Defendant's insulation product contains formaldehyde.

### B. Trademark Applications

Plaintiff is the owner of two trademarks and one service mark. Since at least 1986, defendant has continuously used the CORBOND mark in connection with foam insulation, chemical resins making up CORBOND foam insulation and insulation installation services. On October 7, 1986, the United States Patent and Trademark Office issued plaintiff U.S. Trademark Registration No. 1,412,348 for the mark CORBOND in block letters for "spray in place polyurethane insulation." In addition, on February 11, 1997, the United States Patent and Trademark Office issued plaintiff U.S. Service Mark Registration No. 2,037,263 for the mark CORBOND in block letters for "installation of building insulation." Finally, on December 8, 1998, the United States Patent and Trademark Office issued plaintiff U.S. Trademark Registration No. 2,208,272 for the mark CORBOND in block letters for "chemical resins for use in the manufacture of spray in place polyurethane insulation." The United States Patent and Trademark Office did not refuse any of plaintiff's applications for the CORBOND mark on the ground that the mark is descriptive. Each of plaintiff's trademarks and its service mark has achieved incontestable status as noted by reference to "Sections 8 & 15" on the certified copies of each of the marks' registration numbers.

When Porter started defendant Core Foam, Inc. in 2002, he and his wife Dawn Porter worked with a graphic artist to create a name and logo for the company. They selected the name Core Foam, Inc.

to convey to consumers that the insulation is injected into the core cavities of concrete masonry blocks. The graphic artist created a logo incorporating a concrete masonry block to depict "o's" in the words "core" and "foam." Defendant uses this mark in connection with its foam insulation. Because Porter could not afford the expense of an official trademark search conducted by a lawyer, he performed his own search in online trademark databases within the insulation industry. On January 6, 2003, defendant filed trademark application serial number 78/200,347 in the United States Patent and Trademark Office to register the following mark:

Masonry Foam Insulation

## C. *Marketing, Sales and Distribution*

Approximately 75 percent of plaintiff's sales are for residential applications, 20 percent are for commercial applications and 5 percent are for institutional applications, such as hospitals and university buildings. Plaintiff sells CORBOND foam insulation through approximately 87 installers in approximately 29 states. CORBOND installers are not limited to installing CORBOND foam insulation in a particular geographic area. In distributing CORBOND foam insulation, plaintiff distributes two components, known as components A and B, in sets containing 500 pounds of each component, which are placed in 55–gallon drums for transportation to insulation installers. The installers mix components A and B together to form CORBOND foam insulation.

Although plaintiff sells its foam insulation through a network of installers, it actively markets CORBOND foam insulation to architects, builders, developers and property owners, who make the decisions about the insulation product they will use in a particular building. Plaintiff markets CORBOND foam insulation at trade shows and advertises in national and local publications that include the CORBOND mark in plain, capitalized text. CORBOND installers display the CORBOND mark on their equipment and promotional materials, such as truck-trailers and Internet websites. In addition, CORBOND installers have advertised CORBOND foam insulation on radio and television in New York, Maine, Colorado, Montana, Vermont and New Hampshire. Property owners have touted the inclusion of CORBOND foam insulation in their properties when selling them. Plaintiff and CORBOND installers spent approximately $150,000 on advertising expenses in 2004, and $166,000 in 2003. Plaintiff receives unsolicited inquiries from individuals seeking to become CORBOND installers.

Defendant has a network of installers in approximately 24 states through which it sells COREFOAM insulation, as a foaming concentrate in gallon jugs, with a resin portion packaged in paper bags that weigh approximately 55 pounds. Core Foam installers mix the materials to create COREFOAM insulation. Defendant markets COREFOAM insulation to architects, building owners and developers. Porter attended the Insulation Contractors Association of America trade show in early 2004.

Defendant has not advertised its product in print or television media. However, defendant is aware of one installer that included the COREFOAM name in a radio advertisement. Typically, defendant mails promotional information to at least one prospect each month. In many of its documents, defendant uses both the plain text

word COREFOAM and its design mark shown in application serial number 78/200,-347. In three of its documents, however, defendant shows the word "COREFOAM" in plain text with a superscript "TM" in the absence of defendant's design logo. For example, document CFI00218 compares "CoreFoam ™ insulation" to other "Foam–In–Place" products. In document CFI00259, entitled "Job Bid Proposal" and which is supplied to installers, defendant refers to its product as "COREFOAM ™ Masonry Foam Insulation." Nowhere in defendant's product literature, advertisements or website does it refer to plaintiff's products or CORBOND. Porter is unaware of any cases of actual consumer confusion.

In 2003, defendant spent approximately $21,915.35 on advertising expenses and during the first nine months of 2004, it spent $8,448.17.

### D. Other Insulation Products

Other spray foam insulation products use the letters "CORE" or "COR" in their trade names. Two of those products are spray foam insulation products, Core–Fill ™ 500 and ThermoCor. Core–Fill ™ 500 claims to be the "most commonly specified and installed masonry insulation product in America." Thermo–Cor is a phenolic foam product used in several kinds of construction, including hospitals and nursing homes. Omni Core is the name of insulation inserts made to fit into the cores of concrete masonry blocks. KORFIL® is the name of a molded insulation insert used to insulate concrete masonry blocks and to insulate masonry wall systems. BluCor® is a foam insulation board made by Dow Chemical.

## OPINION

### A. Trademark Infringement and Unfair Competition

■ "The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud 'by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks.' " *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir.2001) (citing 15 U.S.C. § 1127). To prevail on a trademark infringement and unfair competition claim under the Lanham Act, "a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Id.* at 637 n. 8. In the trademark context, consumer confusion concerns the "tendency of the mark to indicate the origin of the product in the eyes of the purchasing public." *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir.2004).

■ It is undisputed that plaintiff's mark is incontestable. Therefore, the parties focus their arguments on whether use of defendant's mark, COREFOAM, is likely to cause consumer confusion about the source of the product. The Court of Appeals for the Seventh Circuit has laid out seven factors to consider in assessing the likelihood of consumer confusion: 1) the similarity between the marks in appearance and suggestion; 2) the similarity of the products; 3) the area and manner of concurrent use or promotion of the products; 4) the degree of care likely to be exercised by consumers; 5) the strength of the complainant's mark; 6) any evidence of actual confusion; and 7) the defendant's intent (or lack thereof) to palm off its product as that of another. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461–62 (7th Cir.2000). "[A]lthough no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations." *Id.* at 462.

### 1. Similarity of the marks

■ To determine the similarity of the two marks, one must make the com-

parison "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sullivan*, 385 F.3d at 777. "If one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Id.* Furthermore, when the public does not encounter the marks together, it is inappropriate to consider minor stylistic differences between the marks. *Id.; International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir.1988).

Defendant argues that plaintiff's mark, CORBOND, and its mark, COREFOAM, are dissimilar. According to defendant, plaintiff's mark uses plain text and defendant has a design logo that uses the color blue for the words CORE and FOAM stacked on top of one another, with the "o" in the words "core" and "foam" taking the shape of a gray concrete masonry block. Plaintiff points out that defendant displays its mark as a single-word trademark in several of its documents and even in those documents that display defendant's design logo, the two marks evoke the same audible cadence. Plaintiff argues that because "COR" is the salient portion of its mark and because it looks and sounds like the "CORE" in defendant's mark, defendant's mark creates a likelihood of consumer confusion.

I agree that "COR" is the salient portion of plaintiff's mark. "COR" and "CORE" create the first syllable of the parties' marks. Thus, they are the first letters consumers see and the first sound consumers hear when encountering the parties' marks in the marketplace. Auditory similarities between marks may be relevant in assessing likelihood of consumer confusion. *See, e.g., Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1116 (7th Cir.1997) (fact that defendant used teal color on its stationary and a "swoosh" in writing "Meridian" of little

consequence because "Meridian" mark likely to be used in vocal sense). It is undisputed that both parties have attended trade shows and that both of their products have been mentioned on the radio. Drawing all inferences in favor of the nonmoving party, I find it likely that the parties rely on oral marketing and advertising in the spray-foam insulation marketplace. Because "COR" and "CORE" sound the same and are the first part of a two-syllable mark, I find that the parties' marks are similar in an auditory sense.

The parties' marks are similar in a visual sense as well. It is undisputed that some of defendant's documents, such as job bid proposals, display only the plain text word COREFOAM without defendant's design logo. It is undisputed also that defendant sells its spray-foam insulation product to installers and that defendant supplies its job bid proposal form to installers. Therefore, a primary group of defendant's consumers does not see the design logo when filling out the job bid proposal. Rather, they see the word "CoreFoam" in plain text. It is undisputed that plaintiff registered its CORBOND mark in block letters and that publications display plaintiff's mark in plain, capitalized text. Thus, drawing all inferences in the plaintiff's favor, a factfinder could find that consumers would become confused about the origin of the parties' products because the first three letters of each party's mark are displayed in a similar plain text format. (I note that in defendant's publications that show the design logo, confusion in the marketplace is less likely to occur. *See, e.g., Sullivan*, 385 F.3d at 777–78 (failing to find similarity of two "Survivor" marks because consumers in marketplace never see defendant's mark alone but always surrounded by words, "Outplay, Outlast, Outwit")). Because the parties' marks sound and look similar as consum-

ers encounter them in the marketplace, this factor weighs in favor of the plaintiff.

## 2. *Similarity of the products*

■ Both parties' marks are tied to foam insulation products. Defendant argues that its product is different from plaintiff's product because plaintiff's product is sprayed onto walls while defendant's product is injected into the cavities of concrete masonry blocks. However, it is undisputed that one can apply defendant's product to stud wall cavities as well. Furthermore, "goods or services do not need to be identical or even competitive in order for likelihood of confusion to exist." *Bishops Bay Founders Group, Inc. v. Bishops Bay Apartments, LLC,* 301 F.Supp.2d 901, 912 (W.D.Wis.2003) (citing *International Kennel Club,* 846 F.2d at 1089). A key difference between the products appears to be how installers apply the products to stud walls; installers spray plaintiff's product onto walls whereas they inject defendant's product into stud wall cavities. Balancing the similarities against the differences, the similar aspects of the two products are central. Therefore this factor weighs in favor of the plaintiff.

## 3. *Area and manner of concurrent use and promotion*

Defendant argues that installers use its product differently from plaintiff's product. They spray plaintiff's product onto walls or sheathing but they inject defendant's product into the cavities of concrete masonry blocks. In addition, defendant contends that the parties' products differ in cost and in the way the parties distribute their products to installers. Despite these differences, the use of the products overlaps because installers can apply either products to stud walls. Therefore, there is overlap in the use of the parties' products. In addition, "[t]he 'area and manner of concurrent use' factor requires us to consider whether there is a relationship in use, *promotion,* distribution, *or* sales between the goods or services of the parties." *Forum Corp. of North America v. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir.1990) (emphasis added). It is undisputed that both parties market their foam insulation products to architects, builders and developers. Given the meaningful overlap in the use and promotion of the parties' products, this factor weighs in favor of the plaintiff.

## 4. *Degree of care*

Defendant points out that both parties sell their products to insulation installers. According to defendant, installers are sophisticated buyers who would not confuse a spray-in-place foam insulation that is delivered in premixed 55 gallon/500 pound drums with an injectable foam insulation delivered in gallon jugs with bags of resin. Plaintiff argues that architects who view defendant's job bid proposal may believe that they are bidding on plaintiff's product because the proposal does not contain defendant's design logo. Plaintiff points out correctly that although the confusion may be alleviated once the architect or developer views the product at time of installation, "initial interest confusion is a form of likelihood of confusion that can trigger a finding of infringement." *Bishops Bay,* 301 F.Supp.2d at 912. It is undisputed that installers fill out the job bid proposal form and therefore they likely know the product on which they are bidding. However, drawing all inferences in favor of the non-moving party, it is reasonable to assume that installers submit the form to architects and developers who then review the form before making a final decision on the type of insulation to use. Because the parties' marks sound and look similar as consumers encounter them on the job bid proposal, consumers such as architects and developers may experience initial interest confusion when purchasing the parties'

foam insulation products. This factor weighs in favor of the plaintiff.

5. *Strength of mark*

■ "The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *Eli Lilly*, 233 F.3d at 464. "In general, the level of trademark protection available corresponds to the distinctiveness of the mark." *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 727 (7th Cir.1998). Marks are classified into five categories of increasing distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful. *Id.*

Plaintiff argues that because it has used its mark for nearly twenty years and advertises its mark extensively, the mark is strong in the insulation marketplace. Defendant contends that plaintiff's mark is descriptive only; the CORBOND mark describes plaintiff's product as one that insulates the cores of walls and bonds to the exterior surfaces of the material to which it is applied. Furthermore, defendant argues that other insulation companies use similar marks, rendering plaintiff's mark less distinctive.

■ A descriptive mark may receive trademark protection if it acquires secondary meaning "in the collective consciousness of the relevant community." *Id.; see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (mark has secondary meaning if it has become distinctive of applicant's goods in commerce). Thus, even if I agree with defendant's claim that plaintiff's mark is descriptive, I am persuaded that plaintiff's mark is strong in the insulation marketplace. The incontestability of plaintiff's mark is prima facie evidence of secondary meaning for pur-

poses of registering the mark. *Bishops Bay*, 301 F.Supp.2d at 910 (proof of continuous and exclusive use of mark for five or more years establishes prima facie evidence of secondary meaning). Furthermore, it is undisputed that plaintiff has used its mark since at least 1986 in connection with foam insulation and that it has spent approximately $150,000 on advertising expenses in 2004, and $166,000 in 2003. In contrast, defendant has been in operation only since 2002 and it spent approximately $21,915.35 on advertising expenses in 2003. These facts bolster the strength of plaintiff's mark in the foam insulation marketplace. *See, e.g., CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 687 (7th Cir.2001) (citing *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir.2000) (stating that length of use of mark and popularity and reputation of goods demonstrated strength of mark)).

It is not significant that other companies selling spray foam insulation products use the letter "COR" in their marks. The closest competitor with a similar mark is Core–Fill™ 500. Although Core–Fill™ 500 claims to be the "most commonly specified and installed masonry insulation product in America," defendant has not produced any evidence that Core–Fill™ 500 is well-promoted or recognized by consumers. *CAE, Inc.*, 267 F.3d at 685 (absence of evidence that CAE mark has been promoted and recognized by consumers creates no genuine issue of material fact regarding strength of CAE, Inc.'s mark). Statements in a company's promotional materials do not translate into convincing evidence that consumers are aware of the company's product. Defendant's argument may have been more persuasive had defendant proposed facts showing the awareness level of Core–Fill's™ product among foam insulation consumers and the company's promotion efforts compared to plaintiff's efforts. Without this evidence,

but with the evidence of the incontestability of plaintiff's mark and the length of use of its mark, I find that plaintiff's mark is strong in the foam insulation marketplace.

### 6. *Actual consumer confusion*

According to defendant, the court should consider evidence of actual consumer confusion rather than the mere possibility of confusion. Defendant argues that because there is no evidence of actual consumer confusion between the parties' products, such as the results of a consumer survey, this factor should weigh against plaintiff.

Defendant misstates the rule as it applies to actions seeking injunctive relief. Although a consumer survey could show actual consumer confusion, *Eli Lilly*, 233 F.3d at 465, in cases seeking injunctive relief only, a plaintiff need not prove actual confusion. *Bishops Bay*, 301 F.Supp.2d at 913 (citing *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.1990) ("when a plaintiff seeks injunctive relief a 'likelihood of confusion' is all that the plaintiff must prove, but when a plaintiff seeks monetary relief the confusion element merges with … 'injury': a plaintiff then must prove injury as a result of actual confusion in order to prevail.")); *See also Eli Lilly*, 233 F.3d at 465 (in likelihood of consumer confusion analysis, court concerned with evidence of *actual* confusion, not mere risk of confusion). Accordingly, this factor is not relevant to the likelihood of confusion analysis in this case.

### 7. *Defendant's intent*

In the trademark infringement context, "intent" refers to a defendant's intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else. *Meridian*, 128 F.3d at 1120. A defendant's intent is an important factor in the likelihood of consumer confusion analysis and "can even be

weighed more heavily than other factors." *Eli Lilly*, 233 F.3d at 465.

Arguing that defendant acted in bad faith when adopting the mark CORE-FOAM for the company, plaintiff points out that before creating Core Foam, Inc., Porter, defendant's founder, worked as a technical manager for Polymaster, a supplier of foam insulations, where he developed and launched Polymaster's first line of spray polyurethane foam insulation. According to plaintiff, Porter's experience at Polymaster and other companies made him aware of plaintiff's CORBOND product. However, I agree with the Court of Appeals for the Second Circuit that "[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith." *Playtex Products, Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 166 (2d Cir.2004). It is undisputed that Porter selected the name Core Foam, Inc. to convey to consumers that his company's insulation product is injected into the core cavities of concrete masonry blocks. Because there is no evidence that defendant intended to confuse customers when adopting its mark COREFOAM, I find that this factor weighs in favor of defendant.

In sum, five of the six relevant likelihood of confusion factors weigh in plaintiff's favor. Although the intent factor weighs in favor of defendant, it does not carry the day. What is most problematic for defendant is that it uses its COREFORM mark without its design logo on some of its documents. Had defendant adopted this visual distinction consistently, it could have made a stronger case that the parties' marks are sufficiently different to avoid confusion. On the present record, however, I must deny defendant's motion for summary judgment as to trademark infringement and unfair competition under the Lanham Act.

## B. *Trademark Dilution*

" 'The owner of a famous mark' is entitled to injunctive relief against another person's commercial use of a mark or trade name if that use *'causes dilution of the distinctive quality'* of the famous mark." *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 432–33, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003) (quoting 15 U.S.C. § 1125(c)(1)). According to the Federal Trademark Dilution Act, 15 U.S.C. § 1125, the term "dilution" means "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of": (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake or deception. *Id.* The statute requires plaintiffs to establish actual dilution, despite practical difficulties in doing so. *Id.* at 433–34, 123 S.Ct. 1115 (noting respondents' concern that consumer surveys and other means of demonstrating actual dilution are expensive, often unreliable and therefore, difficult to obtain).

Plaintiff argues that defendant's mark tarnishes its own because the marks are similar, defendant's COREFOAM product contains formaldehyde and use of formaldehyde carries a negative connotation in the insulation marketplace. Plaintiff contends that these facts qualify as circumstantial evidence sufficient to put actual dilution into dispute. *See, e.g., Moseley,* 537 U.S. at 434, 123 S.Ct. 1115 (direct evidence of dilution such as consumer surveys not necessary if actual dilution can be reliably proved through circumstantial evidence); *Ty Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 536 (7th Cir.2003) (noting that Supreme Court did not explain and no one seems to know what "circumstantial evidence" might be).

 However, plaintiff fails to recognize that its mark is not identical to defendant's mark. Proof of actionable di-lution with circumstantial evidence is appropriate when the marks are identical, it does not seem to be sufficient where the marks are merely similar. *Moseley,* 537 U.S. at 434, 123 S.Ct. 1115 (obvious case in which circumstantial evidence is appropriate to prove actual dilution is one in which junior and senior marks identical); *Ty Inc.,* 353 F.3d at 536 (unnecessary to explain what circumstantial evidence entails because terms "Beanies" or "Beanie Babies" not identical to "Screenie Babies"). Even if a party could use circumstantial evidence to show actual dilution in cases of similar but not identical marks, plaintiff's argument does nothing more than suggest that insulation consumers may associate defendant's mark with plaintiff's mark. "[W]here the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Moseley,* 537 U.S. at 433, 123 S.Ct. 1115. Because plaintiff has not adduced adequate evidence to support its actual dilution claim, I will grant defendant's motion for summary judgment on plaintiff's dilution claim.

## C. *Wisconsin Law Violations*

In its amended complaint, plaintiff alleged violations of Wis. Stat. § 100.20, unfair methods of competition and trade practices, as well as unfair competition under Wisconsin common law. Plt.'s Am. Cpt., dkt. # 10, at 10. Plaintiff's state and federal law claims concern the same conduct by defendant: plaintiff alleges that defendant's use of the COREFOAM mark causes confusion among insulation consumers. Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Because I am denying defendant's motion for summary judgment as to plaintiff's federal trademark infringement and unfair competition claims and because defendant failed to develop any argument rebutting plaintiff's state law claims in either of the briefs it filed, I will deny its motion for summary judgment as to those claims. *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived.").

## ORDER

IT IS ORDERED that

1. Defendant Core Foam, Inc.'s motion for summary judgment is DENIED as to plaintiff Corbond Corporation's federal trademark infringement and unfair competition claims;

2. Defendant's motion for summary judgment is GRANTED as to plaintiff's federal trademark dilution claim;

3. Defendant's motion for summary judgment is DENIED as to plaintiff's state law unfair competition claims.