MERRITT, J., delivered the opinion of the court. GIBBONS, J. (p. 390), delivered a separate concurring opinion. MOORE, J. (pp. 391-95), delivered a separate dissenting opinion.
OPINION
MERRITT, Circuit Judge.
In this trademark “dilution by tarnishment” case, brought under the Trademark Dilution Revision Act of 2006,[1] the question is whether the plaintiff, an international lingerie company that uses the trade name designation “Victoria’s Secret” has a valid suit for injunctive relief against the use of the name “Victor’s Little Secret” or “Victor’s Secret” by the defendants, a small retail store in a mall in Elizabeth-town, Kentucky, that sells assorted merchandise, including “sex toys” and other sexually oriented products. The District Court issued the injunction. Since then the shop has been operating under the name of “Cathy’s Little Secret.” The District Court concluded that even though the two parties do not compete in the same market, the “Victor’s Little Secret” *385 mark — because it is sex related — disparages and tends to reduce the positive associations and the “selling power” of the “Victoria’s Secret” mark. The question is whether the plaintiffs case meets the definitions and standards for “dilution by tarnishment” set out in the new Act which amended the old Act, ie., the Federal Trademark Dilution Act of 1995.[2]
The new Act was expressly intended to overrule the Supreme Court interpretation of the old Act in this very same case, Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003), rev’g 259 F.3d 464 (6th Cir.2001), affg 54 U.S.P.Q.2d 1092 (W.D.Ky.2000). The Supreme Court reversed a panel of this Court that had affirmed an injunction against “Victor’s Little Secret” issued by the District Court. On remand to the District Court from the Supreme Court after the 2003 reversal, no new evidence was introduced, and the District Court reconsidered the case based on the same evidence but used the new language in the new Act which overrules the Supreme Court in this case. We will first brief the Supreme Court opinion and the reasons Congress overruled the Supreme Court in this case. We will then outline our understanding of the new standards for measuring trademark “dilution by tarnishment” and apply them to this case. We conclude that the new Act creates a kind of rebuttable presumption, or at least a very strong inference, that a new mark used to sell sex related products is likely to tarnish a famous mark if there is a clear semantic association between the two. That presumption has not been rebutted in this case.
I. The Supreme Court Opinion and the New Act
The Supreme Court explained that this case started when an Army Colonel at Fort Knox saw an ad for “Victor’s Secret” in a weekly publication. It advertised that the small store in Elizabethtown sold adult videos and novelties and lingerie.[3] There was no likelihood of confusion between the two businesses or the two marks, but the Army Colonel was offended because the sexually-oriented business was semantically associating itself with “Victoria’s Secret.” The Court explained *386 that the concepts of “dilution by blurring” and “dilution by tarnishment” originated with an article in the Harvard Law Review, Frank Schechter, “Rational Basis of Trademark Protection,” 40 Harv. L.Rev. 813 (1927), and that the history and meaning of the concepts were further well explained in Restatement (Third) of Unfair Competition, Section 25 (1995). The Restatement section referred to by the Supreme Court explains this new intellectual property tort and contains in § 25 a comprehensive statement of “Liability Without Proof of Confusion: Dilution and Tarnishment.” “Tarnishment,” as distinguished from “dilution by blurring” was the only claim before the Supreme Court and is the only claim before us in this new appeal. We quote at length the relevant Restatement explanation of “tarnishment” in the footnote below.[4]
After reviewing a number of secondary sources other than the Harvard Law Review article and the Restatement, including state statutes on dilution and a Fourth Circuit case, the Supreme Court held that “actual harm” rather than merely the *387 “likelihood of tarnishment” is necessary and stated its conclusion as follows:
Noting that consumer surveys and other means of demonstrating actual dilution are expensive and often unreliable, respondents [Victoria’s Secret] and their amid argue that evidence of an actual “lessening of the capacity of a famous mark to identify and distinguish goods or services,” may be difficult to obtain. It may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence — the obvious case is one where the junior and senior marks are identical. Whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation. The evidence in the present record is not sufficient to support the summary judgment on the dilution count. The judgment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.
537 U.S. at 434, 123 S.Ct. 1115 (emphasis added).
Thus, the Court held that “actual harm” rather than merely a “likelihood” of harm must be shown by Victoria’s Secret in order to prevail and that this means that Victoria’s Secret carries the burden of proving an actual “lessening of the capacity of the Victoria’s Secret mark to identify and distinguish goods or services sold in Victoria’s Secret stores or advertised in its catalogs.” Id. In the new law Congress rejected the Court’s view that a simple “likelihood” of an association in the consumer’s mind of the Victoria’s Secret mark with the sexually-oriented videos and toys of “Victor’s Secret” is insufficient for liability.
The House Judiciary Committee Report states the purpose of the new 2006 legislation as follows:
The Moseley standard creates an undue burden for trademark holders who contest diluting uses and should be revised.
The new language in the legislation [provides] ... specifically that the standard for proving a dilution claim is “likelihood of dilution” and that both dilution by blurring and dilution by tarnishment are actionable.
(Emphasis added.) U.S. Code Cong. & Adm. News, 109th Cong.2d Sess.2006, Vol. 4, pp. 1091, 1092, 1097. The relevant language of the new Act designed to carry out this purpose is recited and underlined in footnote 1, supra. The drafters of the Committee Report also called special attention to the “burden” of proof or persuasion placed on “trademark holders” by the Supreme Court’s opinion in Moseley, suggesting a possible modification in the burden of proof. The question for us then is whether ‘Victor’s Little Secret” with its association with lewd sexual toys creates a “likelihood of dilution by tarnishment” of Victoria’s Secret mark.
II. Application of Statutory Standard
The specific question in this case is whether, without consumer surveys or polls or other evidence, a semantic “association” is equivalent to a liability-creating mental “association” of a junior mark like “Victor’s Little Secret” with a famous mark like “Victoria’s Secret” that constitutes dilution by tarnishment when the junior mark is used to sell sexual toys, videos and similar soft-core pornographic products. There appears to be a clearly emerging consensus in the case law, aided by the language of § 25 of the Restatement of Trademarks 3d, quoted in footnote 4, supra, that the creation of an “associa *388 tion” between a famous mark and lewd or bawdy sexual activity disparages and defiles the famous mark and reduces the commercial value of its selling power. This consensus stems from an economic prediction about consumer taste and how the predicted reaction of conventional consumers in our culture will affect the economic value of the famous mark.
There have been at least eight federal cases in six jurisdictions that conclude that a famous mark is tarnished when its mark is semantically associated with a new mark that is used to sell sex-related products. We find no exceptions in the case law that allow such a new mark associated with sex to stand. See Pfizer Inc. v. Sachs, 652 F.Supp.2d 512, 525 (S.D.N.Y.2009) (defendants’ display at an adult entertainment exhibition of two models riding a YIAG-RA-branded missile and distributing condoms would likely harm the reputation of Pfizer’s trademark); Williams-Sonoma, Inc. v. Friendfinder, Inc., No. C 06-6572 JSW (MEJ), 2007 WL 4973848, at *7 (N.D.Cal. Dec. 6, 2007) (defendants’ use of POTTERY BARN mark on their sexually-oriented websites likely to tarnish “by associating those marks for children and teenager furnishings”); Kraft Foods Holdings, Inc. v. Helm, 205 F.Supp.2d 942, 949-50 (N.D.Ill.2002) (pornographic website’s use of “VelVeeda” tarnishes VELYEETA trademark); Victoria’s Cyber Secret Ltd. P’ship v. V Secret Catalogue, Inc., 161 F.Supp.2d 1339, 1355 (S.D.Fla.2001) (defendants’ internet trade names likely to tarnish famous mark when websites “will be used for entertainment of a lascivious nature suitable only for adults”); Mattel, Inc. v. Internet Dimensions Inc., 2000 WL 973745, 55 U.S.P.Q.2d 1620, 1627 (S.D.N.Y. July 13, 2000) (linking BARBIE with pornography will adversely color the public’s impressions of BARBIE); Polo Ralph Lauren L.P. v. Schuman, 46 U.S.P.Q.2d 1046, 1048 (S.D.Tex.1998) (defendants’ use of “The Polo Club” or “Polo Executive Retreat” as an adult entertainment club tarnished POLO trademark); Pillsbury Co. v. Milky Way Prods., Inc., 1981 WL 1402, 215 U.S.P.Q. 124, 135 (N.D.Ga. Dec. 24, 1981) (defendant’s sexually-oriented variation of the PILLSBURY DOUGHBOY tarnished plaintiffs mark); Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 467 F.Supp. 366, 377 (S.D.N.Y.1979) (pornographic depiction of a Dallas Cowboys Cheerleader-style cheerleader in an adult film tarnished the professional mark of the Dallas Cowboys).
The phrase “likely to cause dilution” used in the new statute (see footnote 1) significantly changes the meaning of the law from “causes actual harm” under the preexisting law. The word “likely” or “likelihood” means “probably,” Webster’s Third New International Dictionary 1310 (1963); Black’s Law Dictionary 1076 (1968). It is important to note also that the Committee Report quoted above seeks to reduce the “burden” of evidentiary production on the trademark holder. The burden-of-proof problem, the developing case law, and the Restatement (Third) of Trademarks in § 25 (particularly subsection g) should now be interpreted, we think, to create a kind of rebuttable presumption, or at least a very strong inference, that a new mark used to sell sex-related products is likely to tarnish a famous mark if there is a clear semantic association between the two. This res ipsa loquitur — like effect is not conclusive but places on the owner of the new mark the burden of coming forward with evidence that there is no likelihood or probability of tarnishment. The evidence could be in the form of expert testimony or surveys or polls or customer testimony.
In the present case, the Moseleys have had two opportunities in the District *389 Court to offer evidence that there is no real probability of tarnishment and have not done so. They did not offer at oral argument any suggestion that they could make such a showing or wanted the case remanded for that purpose. The fact that Congress was dissatisfied with the Moseley result and the Moseley standard of liability, as well as apparently the Moseley burden of proof, supports the view of Victoria’s Secret that the present record — in the eyes of the legislative branch — shows a likelihood of tarnishment. Without evidence to the contrary or a persuasive defensive theory that rebuts the presumption, the defendants have given us no basis to reverse the judgment of the District Court. We do not find sufficient the defendants’ arguments that they should have the right to use Victor Moseley’s first name and that the effect of the association is de minimis. The Moseleys do not have a right to use the word “secret” in their mark. They use it only to make the association with the Victoria’s Secret mark. We agree that the tarnishing effect of the Moseley’s mark on the senior mark is somewhat speculative, but we have no evidence to overcome the strong inference created by the case law, the Restatement, and Congressional dissatisfaction with the burden of proof used in this case in the Supreme Court. The new law seems designed to protect trademarks from any unfavorable sexual associations. Thus, any new mark with a lewd or offensive-to-some sexual association raises a strong inference of tarnishment. The inference must be overcome by evidence that rebuts the probability that some consumers will find the new mark both offensive and harmful to the reputation and the favorable symbolism of the famous mark.
Our dissenting colleague, in relying on the Supreme Court treatment of the proof in this case — for example, the long quotation from the Supreme Court concerning the legal effect of the evidence — fails to concede what seems obvious: Congress overruled the Supreme Court’s view of the burden of proof. As quoted above, it said, “the Moseley standard creates an undue burden for trademark holders who contest diluting uses” It seems clear that the new Act demonstrates that Congress intended that a court should reach a different result in this case if the facts remain the same. We do not necessarily disagree with our dissenting colleague that the policy followed by the Supreme Court in such cases may be better. We simply believe that the will of Congress is to the contrary with regard to the proof in this case and with regard to the method of allocating the burden of proof.
III. Other Issues
The defendants also contend that the New Act should not be applied to them in this case because (1) the Law of the Case Doctrine means that the Supreme Court opinion in their favor remains in effect, (2) the new Act is not retroactive, and (3) the plaintiffs claim does not fit within the language of the Act found in 15 U.S.C. § 1125(c)(5) which reads as follows:
Additional remedies
In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. [Describing requirements in addition to normal injunctions under § 1125(c)(1) to obtain injunctions in various kinds of trademark disputes.] The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, [Describing remedies for attorneys fees, treble damages, etc., not applicable here.] subject to the discretion of the court and the principles of equity if—
*390 (A) The mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006, and
(B) in a claim arising under this subsection- — ■
(i) by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or
(ii) by reason of dilution by tamishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.
Defendants claim somehow that the new Act is only applicable to claims brought under this subsection and that the plaintiffs claims were brought for use of a trade name used before, not after October 6, 2006, and hence in violation of subsection (5)(A).
1. Law of the Case Doctrine.— The Law of the Case Doctrine has no application here to the prospective relief sought because while the case was pending a “controlling authority” (Congress) changed the law, see United States v. Moored, 38 F.3d 1419, 1421 (6th Cir.1994) (“a subsequent contrary view of the law by the controlling authority” in a pending case justifies disregarding the Law of the Case Doctrine).
2. Retroactivity. — New statutes are not necessarily “retroactive” and may be applied to pending cases where prospective relief is sought for ongoing conduct: “When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.” Landgraf v. USI Film Prods., 511 U.S. 244, 273-74, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
3. Applicability of 15 U.S.C. § 1125(c)(5). — The defendants’ reliance on this subsection of the new act is misplaced. This subsection of the new Act refers to “Additional remedies,” not set out in the injunctive relief section of § 1125(c)(1), the first section of the new Act quoted in footnote 1 above which provides for an injunction “at anytime after the owner’s mark has become famous” and the junior mark “that is likely to cause dilution” is used. The new Act intervened and required a reconsideration of the case on the merits. We have now fully considered the ease on the merits, as well as the defendants’ other defenses and conclude that the District Court did not err in its decision in favor of the plaintiff, Victoria’s Secret.
Accordingly, the judgment of the District Court is AFFIRMED.

. The relevant provisions of the new law change the test for "dilution by tarnishment” from an "actual” to only a likelihood of "harm” to the "reputation” of the senior mark:
15 U.S.C. § 1125(c) Dilution by blurring; dilution by tarnishment (1) Injunctive relief
Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner’s mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition or of actual economic injury. (2) Definition
(C) For purposes of paragraph (1), "dilution by tarnishment” is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.
(Emphasis added.)

. The relevant provisions of the old law provide:
§ 1125(c)(1). The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person’s commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark ....

. The Supreme Court explained:
In the February 12, 1998, edition of a weekly publication distributed to residents of the military installation at Fort Knox, Kentucky, petitioners advertised the "GRAND OPENING just in time for Valentine's Day!” of their store "VICTOR’S SECRET” in nearby Elizabethtown. The ad featured “Intimate Lingerie for every woman," "Romantic Lighting”; "Lycra Dresses”; “Pagers”; and "Adult Novelties/Gifts.” An army colonel, who saw the ad and was offended by what he perceived to be an attempt to use a reputable company's trademark to promote the sale of "unwholesome, tawdry merchandise,” sent a copy to respondents. Their counsel then wrote to petitioners stating that their choice of the name “Victor’s Secret” for a store selling lingerie was likely to cause confusion with the well-known VICTORIA'S SECRET mark and, in addition, was likely to "dilute the distinctiveness” of the mark. They requested the immediate discontinuance of the use of the name "and any variations thereof.” In response, petitioners changed the name of their store to "Victor's Little Secret.” Because that change did not satisfy respondents, they promptly filed this action in Federal District Court. 537 U.S. at 426, 123 S.Ct. 1115 (internal citations omitted).

. c. Interests protected. The antidilution statutes have been invoked against two distinct threats to the interests of a trademark owner. First, a mark may be so highly distinctive and so well advertised that it acts as a powerful selling tool. Such a mark may evoke among prospective purchasers a positive response that is associated exclusively with the goods or services of the trademark owner. To the extent that others use the trademark to identify different goods, services or businesses, a dissonance occurs that blurs this stimulant effect of the mark. The antidilution statutes protect against this dilution of the distinctiveness and selling power of the mark.
The selling power of a trademark also can be undermined by a use of the mark with goods or services such as illicit drugs or pornography that ''tarnish” the mark's image through inherently negative or unsavory associations, or with goods or services that produce a negative response when linked in the minds of prospective purchasers with the goods or services of the prior user, such as the use on insecticide of a trademark similar to one previously used by another on food products.
Tarnishment and dilution of distinctiveness, although conceptually distinct, both undermine the selling power of a mark, the latter by disturbing the conditioned association of the mark with the prior user and the former by displacing positive with negative associations. Thus, tarnishment and dilution of distinctiveness reduce the value of the mark to the trademark owner.
g. Tarnishment. The antidilution statutes have also been invoked to protect the positive associations evoked by a mark from subsequent uses that may disparage or tarnish those associations. The rule stated in Subsection (l)(b) applies to cases in which the tarnishment results from a subsequent use of the mark or a substantially similar mark in a manner that associates the mark with different goods, services, or businesses. Use of another's mark by the actor, not as a trademark or trade name, but in other ways that may disparage or tarnish the prior user’s goods, services, business, or mark is governed by the rule stated in Subsection (2).
Any designation that is distinctive under the criteria established in § 13 is eligible for protection against disparaging or tarnishing use by others. Whenever the subsequent use brings to mind the goods, services, business, or mark of the prior user, there is potential for interference with the positive images associated with the mark. To prove a case of tarnishment, the prior user must demoristrate that the subsequent use is likely to come to the attention of the prior user's prospective purchasers and that the use is likely to undermine or damage the positive associations evoked by the mark.
Illustration:
3. A, a bank, uses the designation "Cookie Jar” to identify its automatic teller machine. B opens a topless bar across the street from A under the trade name "Cookie Jar.” Although prospective customers of A are unlikely to believe that A operates or sponsors the bar, B is subject to liability to A for tarnishment under an applicable anti-dilution statute if the customers are likely to associate A’s mark or A’s business with the images evoked by B’s use.